**MINSKY'S FOLLIES OF FLORIDA, Inc.,
v. SENNES.**

No. 14266.

United States Court of Appeals
Fifth Circuit.

Aug. 6, 1953.

Rehearing Denied Sept. 17, 1953.

Ella Jo Stollberg, Hollywood, Fla., S. O. Carson, Miami, Fla., for appellant.

Robert G. Young, W. L. Gray, Jr., Blackwell, Walker & Gray, Miami, Fla., for appellee.

Before BORAH, RUSSELL, and STRUM, Circuit Judges.

STRUM, Circuit Judge.

This is an action at law to recover damages for the alleged breach of an oral agreement to enter into a lease of real property for a period longer than one year.

Upon the ground that the statute of frauds had not been complied with, the district judge dismissed the suit on the pleadings insofar as plaintiff sought recovery in the sum of $15,000 for loss of use of the premises involved. As to other items of claimed damage, which aggregate less than $3,000, the district judge, upon the ground that the requisite jurisdictional amount was lacking, remanded the cause to the state court from whence it had been previously removed to the United States District Court. Plaintiff below appeals as to both the dismissal and the remand.

It is alleged that shortly prior to June 8, 1950, plaintiff below, Minsky's, as proposed lessor, and defendant below, Sennes, as proposed lessee, commenced negotiations for a three year lease, commencing October 10, 1950, upon premises in Broward County, Florida, popularly known as Colonial Inn, furnished for and used as a seasonal night-

club and restaurant. The negotiations continued until September 20, 1950, when it is alleged that the parties orally agreed upon the terms of a lease.

Plaintiff had a written lease prepared, and it is alleged "That on or about October 11, 1950, the defendant approved said lease agreement, and again then and there agreed to execute same." The parties being in different cities, defendant Sennes sent plaintiff several letters and telegrams during the period from October to December, 1950, in which he referred to the "Colonial Inn deal," and "the lease of the Colonial Inn," and promised to come in at an early date and execute the lease, but did not do so. Nor did defendant make the $10,000 deposit required by the lease as security for his performance thereof, although he tendered a check for $2,500 on October 18, 1950.

These letters and telegrams, except the final telegram, were signed "Frank," although the words "Frank Sennes" were typewritten beneath that signature on the letters. The only description of the premises appearing in these communications is the "Colonial Inn." The proposed lease, containing a definite legal description, was never executed by either party.

Finally it is alleged that after making plaintiff a counter proposal "on the Colonial Inn deal," on December 5, 1950, which was not accepted, defendant on December 11, 1950, telegraphed plaintiff that on advice of his doctor he could not "go into the Colonial Inn," and returned the proposed lease, unexecuted. This telegram is signed "Frank Sennes."

Meanwhile, at the express request of defendant, plaintiff had procured a liquor license for 1951, at a cost of $1,000, for use in the Colonial Inn, which was of no value to plaintiff; had employed a watchman for said premises, at $100 per month; had employed counsel to draw the proposed lease, at a cost of $450; and had incurred other incidental expenses for long distance telephone calls, and the like. Plaintiff sues to recover these expenses, as well as for loss of use of the premises from October 10, 1950, to October 30, 1951, in the sum of $15,000, plaintiff having sold the premises on the latter date.

The Florida statutes provide that, with exceptions not material here, no interest in lands for a term of more than one year shall be created in any other manner than by instrument in writing, signed in the presence of two subscribing witnesses by the party creating such estate or interest. Section 689.01, Fla.Stat.1951, F.S.A.

Section 725.01, Fla.Stat.1951, F.S.A., provides: "No action shall be brought * * upon any contract for the sale of lands, * * * or for any lease thereof for a period longer than one year, * * * unless the agreement or promise upon which such action shall be brought, or some note or memorandum thereof shall be in writing and signed by the party to be charged therewith * * *."

In order to satisfy the latter statute, the writing must be certain as to the parties, the subject matter, the promises upon both sides, and the consideration. Alton Beach Realty Co. v. Henderson, 92 Fla. 689, 110 So. 256. In order that there be a contract, the parties must have a definite and distinct understanding, common to both, and without doubt or difference. Unless all understand alike, there can be no assent, and therefore no contract. Webster Lbr. Co. v. Lincoln, 94 Fla. 1097, 115 So. 498. Sennes' letter to plaintiff, dated December 5, 1950, which was the last communication prior to his final refusal to enter into the lease, made plaintiff a counter proposition, which was not accepted, and the matter remained thus when Sennes finally refused to sign on December 11, 1950.

We recognize the doctrine that the memorandum required by section 725.01, supra, may consist of more than one writing. But when such a situation exists, some of the writings being signed by the party to be charged, and others not signed by him, in order that the unsigned writings may be used to supply essential elements of the contract, there must be some reference to them in the signed writing of such party. The signed memorandum of the contract must show the contract between the parties, either on its face or by reference to

some other writing, so that it can be understood without recourse to parol proof. Meek v. Briggs, 80 Fla. 487, 86 So. 271; Mehler v. Huston, Fla., 57 So.2d 836. Plaintiff relies upon this principle.

■ The fatal difficulty here is that neither the telegrams nor the letters refer with requisite certainty to the proposed lease on which plaintiff relies, even if the signatures to said communications be regarded as sufficient. There is here no such writing as will comply with either of the above statutes, nor is there possession or part performance sufficient to take the transaction out of the operation of section 725.01, supra. To satisfy the statute of frauds, the written memorandum must disclose all the terms of the contract. It can not rest partly in writing and partly in parol. Rhode v. Gallat, 70 Fla. 536, 70 So. 471; Rundel v. Gordon, 92 Fla. 1110, 111 So. 386; Alton Beach Realty Co. v. Henderson, 92 Fla. 689, 110 So. 256. Compare Grable v. Maroon, Fla., 40 So.2d 450. To take the transaction out of the statute, possession must have been under and in pursuance of the lease. Williams v. Bailey, 69 Fla. 225, 67 So. 877. The mere employment of the watchman is not sufficient to satisfy that requirement. Nor was procurement of the liquor license by plaintiff a sufficient part performance of the lease to bind the defendant.

■ It follows that insofar as plaintiff sues for loss of use of the premises, there can be no recovery for the reason that the action in this respect is in effect one to enforce the lease. To allow such a recovery would amount to an indirect enforcement of the lease, thus subverting the statute. We therefore affirm the district court in dismissing the complaint as to this item of damage.

■ But plaintiff also sues to recover other damages resting upon a different basis of liability, and unaffected by the statute of frauds. These damages consist of the cost of the liquor license, the salary of the watchman, counsel fees for preparing the lease, long distance telephone calls, and the like. On this cause of action, plaintiff is entitled to recover if it proves its allegations.

■ These items of damage do not flow from the breach of the lease itself, but from defendant's request that these expenditures be made by plaintiff for defendant's benefit, which was done. In these circumstances, the law will imply a promise on the part of the defendant to repay. At common law, the action would have been in implied assumpsit. It is of no consequence that the expenditures were collateral to an unenforceable lease, so long as the money was spent at defendant's request and for his benefit. If the expenditures also benefitted the plaintiff, that would not relieve the defendant of his obligation to pay which the law casts upon him, although that might be a matter to be considered in reduction of damages. The lease is unenforceable because of the statute of frauds, but that fact does not relieve the defendant of the implied obligation cast upon him by law, independently of the lease, to reimburse the plaintiff for moneys expended at defendant's request and for his benefit. People's Nat. Bank of Orlando v. Magruder, 77 Fla. 235, 81 So. 440.

■ As these items of damage appear to aggregate only $2850, the district judge remanded the cause to the state court because he was of the opinion that the federal jurisdictional amount is lacking. But federal jurisdiction, based upon diversity of citizenship and amount, is determined by the amount in good faith demanded by the plaintiff. Jurisdiction once acquired is not lost because it turns out that the plaintiff can not recover all that he has in good faith demanded, but that his recovery will be less than $3,000. Levinski v. Middlesex Banking Co., 5 Cir., 92 F. 449; St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845; McLean v. York Oil Field Supply Co., 5 Cir., 138 F.2d 804; Nickelson v. Nestles Milk Products Corp., 5 Cir., 107 F.2d 17; Ford, Bacon & Davis v. Volentine, 5 Cir., 64 F.2d 800; Kirby v. American Soda Fountain Co., 194 U.S. 141, 24 S.Ct. 619, 48 L.Ed. 911; Smithers v. Smith, 204 U.S. 632, 27 S.Ct. 297, 51 L.Ed. 656.

The cause should therefore have been retained for trial as to the items of damage other than the loss of use of the premises. The order of remand is reversed.

Affirmed in part and reversed in part.